UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NEAL R. LOCKETT, | Case No. C16-617 RSM |
| Plaintiff, | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |
| v. | |
| KING COUNTY, a municipal corporation, JODIE TRUEBLOOD, an individual, and PAT KOHLER, individually, in her official capacity as Director of the Washington State Department of Licensing, | |
| Defendants. | |

## I.   INTRODUCTION

This matter comes before the Court on Defendants King County and Jodie Trueblood's Motion for Summary Judgment (Dkt. #14), and Defendant Pat Kohler's Motion for Summary Judgment (Dkt. #19). For the reasons below, the Court GRANTS Defendants King County and Jodie Trueblood's Motion and finds Defendant Kohler's Motion MOOT.

## II.   BACKGROUND

The Court need not recite all of the lengthy factual and procedural background of this case and will limit discussion to those facts necessary for ruling on these Motions.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 1

This is a case involving The State of Washington's vehicle licensing and registration services. The state Department of Licensing ("DOL") is by statute responsible for issuing vehicle and vessel certificates of ownership and registration, as well as collecting fees and taxes. The state DOL appoints county agents to carry out these duties pursuant to a standard form contract. *See* Dkt. #15-1; RCW 46.01.130(4); RCW 46.01.140(6). The county recommends, and DOL appoints, private parties known as subagents to also perform these duties and provide licensing services to the public under the county's supervision. *See* RCW 46.01.140(2) & (4)(b). The agent-subagent relationship is also governed by a standard form contract issued by the state DOL. *See* RCW 46.01.140(4)(a). It was under such an agreement that Plaintiff Neal R. Lockett operated his White Center License Agency until December 4, 2015, when King County terminated his contract. *See* Dkts. #15-2 and #15-3.

In late 2012, local law enforcement and the state DOL License Integrity Unit (LIU) learned of suspected criminal activities involving employees of Mr. Lockett's White Center License Agency. Dkt. #18-3 at 13. In the morning of May 23, 2013, King County Licensing Manager Jodie Trueblood learned of a police search at Lockett's sub-agency. Dkt. #18-4 at 2. Ms. Trueblood decided to suspend Lockett's contract on an emergency basis due to the ongoing investigation and allegations of criminal wrongdoing by Mr. Lockett's employees. *Id.* Ms. Trueblood sent Mr. Lockett notices of suspension by letters dated May 24, 2013 and May 28, 2013. Dkts. #18-4 and #18-5. Both letters put Mr. Lockett on notice of his right to appeal the suspension. *Id.* On or about May 24, 2013, Mr. Lockett tried to contact Ms. Trueblood about the suspension but she did not return his calls. Dkt. #23 at 3.

Under the standard DOL contract, subagents may appeal a termination or suspension of their contract to a Dispute Review Board ("DRB"). Dkt. #18-1 at 8. This three person board

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 2

consists of a representative of the County Auditor's Association, a representative of the licensing subagent's association, and a designee from the state DOL. *Id.* DRB proceedings are consistent with binding arbitration expressly authorized by statute. *See* RCW 46.01.140(6)(f).

Mr. Lockett filed a notice of appeal on June 13, 2013. Dkt. #18-7 at 2. The DRB held a hearing on July 1, 2013. *Id.* Both Mr. Lockett and King County Licensing were represented by counsel at the hearing. *Id.* The DRB heard testimony from witnesses, who were questioned by the Board and cross-examined by each party, and considered numerous exhibits. *Id.* at 2-4. The DRB affirmed and upheld the emergency suspension. *Id. at 7.*

After the DRB decision was issued, King County negotiated with Mr. Lockett to lift the suspension and allow him to reopen his subagency. After negotiations, King County Licensing and Mr. Lockett entered into a "Settlement Agreement/Corrective Action Plan" ("CAP"), signed August 8, 2013. Dkt. #18-8. By virtue of agreeing to the CAP, King County Licensing did not waive its right to suspend or terminate its contract with Lockett. *Id*. at 4. In October 2013, Lockett re-opened the White Center sub-agency. Dkt. #15-3 at 6.

In August 2015, after having reviewed Mr. Lockett's title work for a number of months, Elizabeth Soltero contacted DOL's Licensing Integrity Unit ("LIU") assistant administrator, JoAnna Shanafelt, to report patterns she was noticing during her review. Dkt. #15-3 at 6. On December 4, 2015, King County Licensing formally terminated Mr. Lockett's contract when Eddie Cantu, the King County Licensing Manager, hand delivered a termination letter along with a Statement of Facts and Violations. *See* Dkt.# 15-3.

Mr. Lockett filed a December 4, 2015, notice of appeal and another DRB hearing was held on January 14, 2016. *See* Dkts. #15-4; #16-1 at 1. The DRB heard the testimony of twelve witnesses and considered over 600 pages of exhibits. *See* Dkt. #16-1 at 3 and 36. By

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 3

letter dated January 22, 2016, the DRB issued its decision upholding King County Licensing's decision to terminate Mr. Lockett's subagent contract. Dkt. #15-5.

Mr. Lockett filed this lawsuit in King County Superior Court back in August 7, 2015, prior to the DRB decision. *See* Dkt. 14 at 12. Mr. Lockett filed an amended complaint and then, following the termination of his contract, Lockett filed a second amended complaint on March 4, 2016. *See* Dkt. #1-1 ("Second Amended Complaint"). Mr. Lockett asserts a 42 U.S.C. § 1983 claim for deprivation of property and liberty without due process of law and state-law claims for breach of contract and tortious interference with business relationship. *Id*. This Second Amended Complaint added state DOL director Pat Kohler as a Defendant. Defendant Kohler then appeared and removed this action to federal court on April 28, 2016. Dkt. #1.

### III.   DISCUSSION

**A. Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v.*

*U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004).  The Court must draw all reasonable inferences in favor of the non-moving party.  *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

**B. King County's Motion for Summary Judgment**

    **a. Mr. Lockett's §1983 claims**

Mr. Lockett contends in pleading that he had liberty and property interests in his subagency contract that are protected by the due process clause of the Fourteenth Amendment to the United States Constitution.  Dkt. #1-1 at 7.  Mr. Lockett argues that Defendants, by suspending and then terminating his subcontract, deprived him of his constitutionally protected rights and are liable to him under 42 U.S.C. § 1983.  *Id*. at 8.

Defendants King County and Jodie Trueblood argue that Mr. Lockett has no property interest in the subagent contract in question and that he therefore cannot bring any §1983 claim.  Defendants cite *San Bernardino Physicians' Services Medical Group v. County of San Bernardino*, 825 F.2d 1404, 1409 (9th Cir. 1987) at length.  Defendants argue that "in an analogous case, this Court expressed doubt that a subagent has a constitutionally-protected interest in a vehicle licensing subcontract." Dkt. #14 at 16-17 (citing *Shewbert v. Rosand*, 2015 WL 4577705, *8 (W. D. Wash. 2015)).

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 5

In Response, Mr. Lockett argues that "the crucial factors the court considers in determining whether a property interest is constitutionally protected are "the security with which [the interest] is held under state law and its importance to the holder." Dkt. #21 at 15 (citing *San Bernadino*, 825 F.2d at 1408). Mr. Lockett argues that *San Bernadino* stands for the proposition that a contract can create a constitutionally protected property interest, and distinguishes the fact pattern of that case by arguing that he is an individual as opposed to a corporation. *Id*. at 15-16. Mr. Lockett does not cite to an analogous case finding a constitutionally protected property interest in a subagency contract, but argues that the facts of this case meet the above two-part test because "Mr. Lockett's contract could only be terminated for cause," he made a substantial investment based on being awarded the contract, he had a reasonable expectation of contract renewal, and because this contract was his livelihood for 30 years. *Id.* at 16. Mr. Lockett also argues that he has a "constitutionally protected liberty interest in his clearing his name" related to the above facts of this case. *Id*. at 16-17 (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 573, 92 S. Ct. 2701 (1972); *Tibbetts v. Kulongoski*, 567 F.3d 529 (9th Cir. 2009); *Stidham v. Texas Commission on Private Security*, 418 F.3d 486 (5th Cir. 2005)). To support this contention, Mr. Lockett argues that he was "stigmatized in the media," and that "he cannot get another subagent job." *Id.* at 17 (citing without page or paragraph to "Lockett Decl.").

On Reply, Defendants argue that Mr. Lockett lacks a property interest in this contract because it was not an employment contract and because Defendants' decision to end the contract was "unconstrained by any statutory or contractual procedural requirements intended to be a substantive restriction on decision making." Dkt. #29 at 6 (citing *Goodisman v. Lytle*, 724 F.2d 818 (9th Cir. 1984)). Defendants point out that Mr. Lockett fails to address the

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 6

analogous case of *Shewbert, supra*. Defendants argue that Mr. Lockett cannot now raise a liberty interest because he failed to plead this type of constitutional claim. *Id*. (citing Second Amended Complaint at 7-8; *Holcomb v. Burnett*, 2014 WL 1931179 at *2 (W.D. Wash. 2014)). Defendants further argue that the facts he uses to support his liberty interest claim are conclusory or otherwise unsupported by the record. *Id*. at 6-7.

The parties both rely heavily on *San Bernadino*, so the Court will begin its analysis there. 42 U.S.C. § 1983 creates a federal cause of action for deprivation, under color of state law, of rights guaranteed by the United States Constitution or laws. *San Bernadino*, 825 F.2d at 1407 (citing *Stonecipher v. Bray*, 653 F.2d 398, 401 (9th Cir. 1981), *cert. denied*, 454 U.S. 1145, 71 L. Ed. 2d 297, 102 S. Ct. 1006 (1982)). The Court in *San Bernadino* notes, "it has long been settled that a contract can create a constitutionally protected interest." *Id.* at 1407-08. However, the Ninth Circuit goes on to state:

> Having recognized, as we must, that deprivation of contractual rights may create a claim under section 1983, we are faced with an equally compelling necessity to recognize that not *every* interference with contractual expectations does so. It is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim. "We must bear in mind that the Fourteenth Amendment was not intended to shift the whole of the public law of the states into the federal courts." *Brown v. Brienen*, 722 F.2d 360, 364 (7th Cir. 1983).
>
> Even though every contract may confer some legal rights under state law, that fact alone need not place all contracts within federal due process protection.

Id. at 1408. *San Bernadino* then discusses the success of §1983 claims brought in cases dealing with employment contracts and articulates the two-part test raised by Mr. Lockett. Dealing with the specific facts of its case, the Ninth Circuit found that the contracts at issue entered into by the Plaintiff Physicians' Group (a corporation) were not employment contracts and "were

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 7

essentially for the provision of personal services; the physicians in the group made important personal decisions in the expectation of continued employment; and the security of a fixed term and termination only for 'cause' were elements of the contract." *Id*. at 1409. The Court concluded that the contract did not give rise to a constitutional property interest and that the "contract to supply services to the state cannot sensibly be distinguished from construction contracts or even purely material supply contracts, for purposes of federal protection." *Id*. at 1410.

The Court has reviewed the facts of this case and finds it analogous to *San Bernadino* and *Shewbert, supra*. Mr. Lockett has offered no directly analogous case extending §1983 constitutional property rights to the type of contract at issue, which is not a true employment contract but a subagency contract more similar to a construction contract. Accordingly, the Court finds that Mr. Lockett does not have a property interest in the contract at issue giving rise to a §1983 claim. The Court further concludes that Mr. Lockett has failed to adequately plead a liberty interest in this matter or present factual support for such a claim. Given the above, summary judgment dismissal is warranted for all of Mr. Lockett's §1983 claims against all Defendants.

   **b.  Breach of Contract Claim**

Defendants argue that Mr. Lockett's Second Amended Complaint fails to provide any detail as to how Defendants breached an implied covenant of good faith and fair dealing and that Mr. Lockett "must at least connect his good faith/fair dealing argument with some contract term." Dkt. #14 at 22 (citing *Keystone Land & Development Company v. Xerox Corporation*, 152 Wn.2d 171, 177, 94 P.3d 945 (2004). Defendants also argue that, by contractually agreeing to the Dispute Review Boards process, Lockett waived his right to have his dispute

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 8

resolved in the court system. *Id.* at 23 (citing *Godfrey v. Hartford Casualty Insurance Company*, 142 Wn.2d 885, 897, 16 P.3d 617 (2001) ("[a]rbitration is intended to be final; parties agree to waive their right to have their disputes resolved in the court system.")).

In Response, Mr. Lockett argues that *Keystone* had a distinguishable fact pattern where the parties disputed the existence of a contract and that "there is no requirement that… pleading be more specific" than what Mr. Lockett has pled. Dkt. #21 at 23 (citing 152. Wn.2d at 177). Mr. Lockett argues that the Dispute Reviews Board process "is a mandated administrative appeal process, not an arbitration agreement." *Id.* Mr. Lockett argues that RCW 46.01.140(6)(f) merely allows binding arbitration without requiring it, that the appeals process clause is ambiguous, and that this ambiguity must be construed against the drafter. *Id.* at 24 (citing *Rouse v. Glascam Builders Inc.*, 101 Wn.2d 127, 135 677 P.2d 125 (1984)).

On Reply, Defendants argue that Mr. Lockett cannot expand his pleading on this claim through briefing, and reiterate that Mr. Lockett needed to plead this claim with reference to a specific contract term. Dkt. #29 at 10 (citing *Badgett v. Security State Bank*, 116 Wn.2d 563, 570, 807 P.2d 356 (1991)). Defendants argue that RCW 46.01.140(6)(f) statutorily authorized the State DOL to include a binding arbitration provision in the subagency contract, and that this is exactly what was included in this subcontract. *Id.* (citing Dkt. #15-2 at 8 as stating, "[s]ubagent and Agent both agree that the review Board's decision shall be the final decision under this contract.").

The Court finds that Mr. Lockett has failed to properly plead this claim as required under Washington law. *See Keystone*, 152 Wn.2d at 177 ("the duty [of good faith and fair dealing] exists only in relation to performance of a specific contract term"); *Badgett*, 116 Wn.2d at 570 ("[t]he duty to cooperate exists only in relation to performance of a specific

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 9

contract term."). Mr. Lockett's briefing does not remedy the error in pleading. Accordingly, summary judgment dismissal of this claim is appropriate. The Court notes that, even if this claim were not dismissed for this reason, Mr. Lockett cannot bring this contract claim now as it was subject to the binding Dispute Reviews Board process as set forth in the contract.

### c. Tortious Interference Claim

Defendants argue that they cannot be liable under this claim because they were party to the contract at issue. Dkt. #14 at 23 (citing *Olympic Fish Products, Inc. v. Lloyd*, 93 Wn.2d 596, 598, 611 P.2d 737 (1980) ("An action for tortious interference with a contractual relationship lies only against a third party. A party to the contract cannot be liable in tort for inducing its own breach.")).

In Response, Mr. Lockett cites *Olympic Fish* for the proposition that employees acting outside the scope of their employment can be held liable under this claim. Dkt. #21 at 24 (citing 93 Wn.2d at 598). Mr. Lockett argues that the question of scope is usually a factual one and that "evidence exists that Ms. Trueblood's actions were arbitrary, capricious, and unlawful, in direct conflict with her job duties…". *Id*. at 25. Mr. Lockett fails to articulate exactly what evidence he is referring to. Mr. Lockett then argues that Ms. Youngblood did not act in good faith when she "fabricated a basis for emergency termination which set into motion all of the events leading to termination, ignored Mr. Lockett when it was her job to respond to him and she sought a surprise termination in contravention of policy." *Id*.

On Reply, Defendants argue that Mr. Lockett's scope of employment argument is new and not previously pled, and that it is not supported by "competent, admissible evidence." Dkt. #29 at 11. Defendants argue that the concept of "good faith" in this claim means nothing more than an intent to benefit the corporation and that "[i]t is undisputed that Trueblood was acting

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 10

in the course of her employment and for the benefit of King County." *Id* (citing *Olympic Fish*, 93. Wn.2d at 599).

As an initial matter, the Court agrees with Defendants that Mr. Lockett did not plead that Ms. Youngblood was acting outside the scope of her employment. *See* Dkt. #1-1 at 9-10. The Court finds that there is no question of fact that Defendants' actions were taken within the context of the subagency contract at issue and that Ms. Youngblood was acting for the benefit of her employer. The Court further concludes that no reasonable juror could find that Ms. Youngblood's actions were in direct conflict with her job duties, even if a reasonable juror could disagree with Ms. Youngblood's actions or the ruling of the DRB. Accordingly, the Court finds that Ms. Youngblood was acting within the scope of her employment and that she cannot be liable under a theory of tortious interference with a contractual relationship under Washington law. *See Olympic Fish*, 93 Wn.2d at 599-602. Accordingly, the Court will grant Defendant's Motion as to this claim.

**C. Pat Kohler's Motion for Summary Judgment**

Having already ruled above that Mr. Lockett did not have a property or liberty interest in his subagency contract and that his §1983 claims are dismissed as to all Defendants, the Court need not address this Motion. All claims against Defendant Pat Kohler are dismissed.

**IV.   CONCLUSION**

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that:

1) Defendants King County and Jodie Trueblood's Motion for Summary Judgment (Dkt. #14) is GRANTED. All of Plaintiff's Claims are DISMISSED with prejudice.

2) Defendant Pat Kohler's Motion for Summary Judgment (Dkt. #19) is STRICKEN as MOOT.

3) This case is CLOSED.

DATED this 21st day of December 2016.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 12